## Overseers of the Poor of Cherry Township *versus* Overseers of the Poor of Marion Township.

1. A term of court is a fixed period of time, and where under the authority given by the Act of March 18th 1875, a court has ordered the several courts of the county "to continue two weeks, or so long as is necessary to dispose of the business," the court thus convened is an adjourned court and not a regular term.

2. The regular December term of a court had expired and a special term was ordered and by adjournments was continued until December 29th. The Act of June 13th 1836 requires an appeal for an order of removal of a pauper to be taken to the next Court of Quarter Sessions: *Held*, that the court in session on the 29th of December was no part of the previous regular term and an appeal thereto was too late.

3. *It seems*, that overseers of the poor have no power to bind their townships by an agreement of submission.

November 18th 1880. Before MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ. SHARSWOOD, C. J., absent.

Error to the Court of Quarter Sessions of *Butler county:* Of October and November Term 1880, No. 278.

In the court below this was the petition of John Smith and H. C. McCoy, overseers of the poor of the poor district of Cherry township, Butler county, for an appeal *nunc pro tunc*, and for an order upon two justices who issued an order of removal of a pauper to return a certified transcript of the proceedings had before them.

On the 29th of October 1879, John K. Gilghrist and William Murrin, overseers of the poor of Marion township, Butler county, obtained an order of removal removing one Kate McClinchy, a pauper chargeable upon them, to the poor district of the township of Cherry, said county. Gilghrist, on the 21st November 1879, presented the said Kate McClinchy, and the order of removal, to H. C. McCoy, Esq., one of the overseers of Cherry township, at his place of business in said township. McCoy protested against receiving the said pauper; and insisted that the order of removal was irregular, and that the said pauper was not rightfully chargeable upon Cherry township, she never having obtained a residence therein, &c.

Gilghrist then agreed with McCoy, each for his township respectively, that in order to avoid expenses of litigation they would amicably submit all matters at variance between them to two justices of the peace—one to be chosen by an overseer of each township, and whose decision should be final. Accordingly, Gilghrist selected William Black, Esq., and McCoy selected Robert McElhaney, Esq., and the 10th of December then next, at 10 o'clock A. M., was fixed as the time, and the office of William Black, Esq., as the place of meeting for the hearing before the said justices. Gilghrist until after the hearing retained the pauper

[Overseers of Cherry Twp. v. Overseers of Marion Twp.]

and the order of removal; and the said William Black, Esq., at the request of the parties, entered a record of their agreement and submission on his docket.

On the 10th of December 1879, the parties, with their witnesses, met at the time and place stipulated, the overseers of Cherry township ready to proceed with the submission as per agreement, but the overseers of Marion township, having discovered (as they believed) that the time for an appeal from said order of removal had expired, and that the overseers of Cherry township, in consequence, had no other alternative than to accept the pauper, refused to go on with the hearing, and demanded that the overseers of Cherry township submit without further contention. This the overseers of Cherry township refused to do, whereupon the overseers of Marion, a few days thereafter, petitioned the Court of Common Pleas for a mandamus to compel the overseers of Cherry to accept the said pauper, and were awarded a rule to show cause. Before answering this rule the overseers of Cherry township, apprehending that they were not entitled to an appeal, as of right, on the 29th of December 1879, presented a petition to the Court of Quarter Sessions (containing in detail the facts as above stated) praying the court to grant an appeal "*nunc pro tunc*" as of the last day of last term, and to make an order on the justices who granted the order of removal to return a certified transcript of the proceedings had before them, and to give such other and further relief as the cause might require.

The court granted a rule to show cause returnable to 2d Monday of January, and on the same day respondents accepted service of said rule, and in lieu of and answer thereto, filed an agreement between the attorneys for the respective townships as follows:

"Whereas, in the Court of Common Pleas of Butler county, Pa., on petition of the overseers of Marion township, Butler county, Pa., a rule was granted on the overseers of the poor of Cherry township, said county, to show cause why a mandamus should not issue to said overseers of Cherry township to receive and maintain one Kate McClinchy on an order of removal issued by James McGill and C. M. Brown, two justices of the peace of said county; and also, whereas, on the 29th day of December 1879, on petition of the overseers of the poor of Cherry township, a rule was granted by the Court of Quarter Sessions of said county to show cause why an appeal should not be granted from said order of removal, &c.

" Therefore, it is hereby agreed, that depositions may be taken on this last-mentioned rule, on the questions that would come up on an appeal, to wit, the place of last settlement of the pauper and the amount expended by Marion township after order of maintenance in support of and caring for said pauper. And if the court be of opinion from said proofs that the last place of legal settlement of said pauper is in Cherry township, then the overseers of Cherry

15 NORRIS—34

[Overseers of Cherry Twp. *v.* Overseers of Marion Twp.]

township to take and maintain said Kate McClinchy, and pay costs of this proceeding and of the proceedings in the Common·Pleas for mandamus, and to pay to the overseers of Marion township the moneys expended by them, as proven, for support, &c., of said pauper, after order of maintenance and to date of decision ; and in case the court be of opinion that said pauper's last place of legal residence is not in Cherry township, then the overseers of Marion township to discontinue the proceedings for mandamus on their part ; and the court to make this rule absolute, and decree according to the proofs as though appeal were in time.    The court to order and decree in accordance with this agreement after hearing the proofs.

(Signed)            ·            WALKER, REED and BREDIN,
            Attorneys for Cherry Township."
GEORGE A. BLACK, Attorney for respondents.

Under this agreement all subsequent proceedings in the case were based, and depositions were taken sustaining the petition that the pauper's last place of settlement was not in Cherry township.    On the 8th of September 1880, the cause having come on to be heard and argued, the court made the following order : " Case called and argued, and same day on due consideration rule discharged at costs of party obtaining it."

To this the petitioners filed the following exceptions, which the court overruled, viz. :

1. In ruling that the petition for the appeal was not presented to the next Court of Quarter Sessions after the order of removal. 2. In ruling that the petition was not filed in time to entitle petitioners to their appeal as of right.    3. In ruling that the agreement between the overseers of the respective townships on file in this case was not binding on the said overseers but void.    4. In discharging the rule to show cause why the appeal should not be allowed *nunc pro tunc*, the rule having been made absolute by the said agreement of the overseers of the respective townships.    5. In discharging the rule to show cause aforesaid because respondents had never filed an answer thereto.    6. In discharging said rule at costs of petitioners.

The Act of 13th June 1836, Pamph. L. 546, pl. 19, requires an appeal from an order of removal to be taken to the next Court of Quarter Sessions, and not elsewhere.    The order of removal in this case was obtained 29th October 1879, during the December term of court, and the petition for an appeal and the agreement aforesaid were filed on 29th December as alleged, at the next Court of Quarter Sessions, to wit, March term 1880.    The December term began on the 1st of September 1879, and ended on the 30th day of November 1879.    The next Court of Quarter Sessions was March term 1880, which commenced on the 1st day of De-

[Overseers of Cherry Twp. *v.* Overseers of Marion Twp.]

cember 1879, and ended, as petitioners alleged, 28th February 1880.

The overseers of Cherry township took this writ, alleging that the court erred in refusing to make an order on the justices, who granted the order of removal, to return a certified transcript of the proceedings had before them, and in ignoring the above recited written agreement and refusing to hear the cause on its merits.

*Charles McCandless* and *James W. Reed*, for plaintiffs in error. —The only question in this case in regard to the time of appeal is, whether or not, under the Act of Assembly, the next Court of Quarter Sessions and the next term of the Court of Quarter Sessions is identical in meaning. If the next Court of Quarter Sessions means the next term of the Court of Quarter Sessions, then, undoubtedly, the petition for an appeal and the order upon the justices, as aforesaid, was within this Act of Assembly. The clerk of the Court of Quarter Sessions for Butler county, Pa., has certified that the March Term of the Court of Quarter Sessions, in and for the county of Butler, began on the 1st day of December 1879, and continued until the 28th day of February 1880, and that the said court was in session at the time this petition was presented and the rule granted thereon, to wit: the 29th of December 1879. If it were otherwise, and any specific day or time was fixed for an appeal to be entered to the next Court of Quarter Sessions, for instance, the first week or two weeks that the court would be in session, for the trial of causes, great injustice might be done.

In the case of Sugar Creek Overseers *v.* Washington Overseers, 12 P. F. Smith 479, the next Court of Quarter Sessions and the next term of Quarter Sessions are used synonymously, the court evidently regarding the terms to be interchangeable. Also, in the Directors of the Poor of Westmoreland County *v.* Overseers of Conemaugh Township, 10 Casey 232, the court referring to the session said: "When the next term of the sessions had gone by." A session or term is always considered as one day: 2 P. A. Browne's Reports 258.

*George & A. T. Black* and *L. Z. Mitchell*, for defendants in error.—The "next court" in the Act of Assembly is plainly intended to mean an actual sitting or session of the court, as the only mode of appealing to that court seems to be by a petition to it, and, of course, it must be in session. See Directors of the Poor, &c., of Northampton *v.* Limestone, 18 P. F. Smith 386. Even if the word "term" had been used, it would still, we contend, mean the same thing, an actual session of the court, as by analogy to road cases where viewers are required to report to the next term.

The next regular term, or next Court of Quarter Sessions in and for the county of Butler, after the order of removal in this case

[Overseers of Cherry Twp. *v.* Overseers of Marion Twp.]

commenced on the first Monday of December 1879, "to continue two weeks, or so long as necessary to dispose of the business."

The records and minutes of the Quarter Sessions Court show that the business fixed for this regular term closed and the court adjourned on Friday, December 12th 1879, at 11.45 A. M.

If the plaintiffs in error had presented their appeal immediately after their alleged disappointment on December 10th 1879, they had time enough during the sitting of the court until noon of December 12th, and possibly might then have been in time, but they made no move until December 29th, a week after they had notice of an application for a mandamus, by a rule accepted by their attorney. A special court had been ordered to meet on December 15th 1879, and did meet and continue in session for jury trials during that week.

Mr. Justice MERCUR delivered the opinion of the court, November 26th 1880.

The overseers had no power to bind the townships by the agreement of submission. The defendant in error had an undoubted right to refuse to ratify it. There was nothing in the agreement, nor in the refusal to ratify it, that extended the time within which an appeal might be taken. The statute fixed the next Court of Quarter Sessions as the time. The next term, after the order of removal, commenced on the first Monday of December. The court actually remained in session until Friday of the second week, being the 12th day of the month. On the morning of the 10th the agreement was repudiated, and notice thereof given. There was, after this, ample time to apply for or take an appeal from the order of removal before the court adjourned.

A term of court is a fixed period of time: Horton et al. *v.* Miller, 2 Wright 270. Under authority given by the Act of 18th March 1875, the court had ordered the several courts of the county " to continue two weeks, or so long as is necessary to dispose of the business." It is true, any business commenced within the term of two weeks, might be prosecuted and completed beyond that time, or the court might by adjournment meet on some day thereafter to dispose of pending business, or other business, not required to be done at a regular term. A court, however, thus convened, would be an adjourned court, and not a regular term.

In fact, on the 11th of October preceding, it had been ordered that a special term, for trial of both civil and criminal causes, be held, commencing on the third Monday of December, being the 15th; and that a venire issue for jurors for said week. That court met and continued in session during the week. It adjourned to the 22d, then to the 23d, and further, to the 29th December. On this last day the petition was presented praying the court to grant the appeal. Thus, it clearly appears, the regular December term

[Overseers of Cherry Twp. *v.* Overseers of Marion Twp.]

had expired. A special term had intervened and by adjournments continued. The court in session on the 29th was no part of the previous regular term, but was an extension of the special term. The learned judge was clearly right in holding the application for an appeal came too late.

Judgment affirmed.